Reiners *v.* Pittsburgh Railways Company, Appellant.

Argued October 14, 1936. Before KEPHART, C. J., SCHAFFER, DREW, LINN and STERN, JJ.

*D. H. McConnell,* with him *J. R. McNary,* for appellant.

*Robert H. Braun, Jr.,* of *Marshall, Braun & Notari,* for appellee.

OPINION BY MR. JUSTICE LINN, November 23, 1936:

Plaintiff, about 2:20 A. M., driving on West Liberty Avenue, in the City of Pittsburgh, collided with the end of a safety zone loading platform. His wife, who was riding in the car with him, was so seriously injured she died almost immediately. He brought suit under the Act of April 15, 1851, P. L. 669, section 19, 12 PS section 1601, and the Act of April 26, 1855, P. L. 309, section 1, 12 PS section 1602, as amended. The negligence averred was failure to illuminate the platform. Defendant's point for binding instructions was refused and judgment was entered on the verdict for plaintiff.

The safety zone platform was 84 feet long, 5 feet wide and raised 6 inches above the level of the street with a distance of 11 feet 3 inches between the platform and the nearest sidewalk curb. The thing which plaintiff struck was a concrete cone about 3 feet high with a base about 3 feet wide; from this cone a shaft or mast arose on which, about 6 feet above the street level, was fastened a box about 24 inches square with a glass front on which was printed the words "SAFETY ZONE." This box was equipped with a light; on top of the mast was another light. We accept the verdict as establishing that these lights were out.*

The parties stipulated in the record that the safety zone platform "was to be maintained, and the lighting facilities maintained and equipped, and the light furnished by the City of Pittsburgh, as part of their regular duties in the street and highway department."

More than a year after the accident, and after this suit was brought against the street railway company, now the appellant, the plaintiff took steps to bring in the City of Pittsburgh, charging that the city was responsible for the failure to light the safety zone. The city objected on the ground that the limitation provision of the death statute (section 2 of the Act of April 26, 1855, P. L. 309, 12 PS section 1603) provided that "the action shall be brought within one year after the death, and not thereafter." The court held that the proceeding against the city was barred for want of prosecution within that time. The trial then proceeded against the railway company with the result stated.

The record shows as we have said that the City of

---

* There was evidence offered on behalf of the defendant, which we of course do not consider, that the safety zone was properly lighted when the plaintiff came along and that in colliding with it the box marked "Safety Zone" and containing a light, was knocked from its fastening in such a way as to disconnect the wires so that immediately after the accident the platform was found not to be illuminated, by persons who then saw it.

Pittsburgh undertook to maintain and light the safety zone. Section 1109 of the Motor Vehicle Code of 1929, P. L. 990, 75 PS section 685, as amended, provides: "Section 1109. Establishment of Safety Zones.—The Secretary of Highways of this Commonwealth, with reference to State highways, and local authorities in cities, boroughs, incorporated towns, and townships of the first class, with reference to highways under their jurisdiction, are hereby authorized to establish safety zones. The Secretary of Highways of this Commonwealth, and local authorities, when establishing a safety zone, shall erect and maintain signs bearing the words 'SAFETY ZONE,' illuminated at night or so designed to reflect light from head lamps."

This safety zone is of a kind not uncommon in the City of Pittsburgh; it was constructed pursuant to plans and at a location approved by the department of traffic planning of that city. After approval of the plans and construction of the platform the city assumed the duty of adequate illumination by equipment installed and with current supplied by it. Section 1109 authorized the city to establish such zones and its regulations for the construction and its assumption of the obligation to equip with lighting devices and to supply current and to "maintain signs bearing the words 'SAFETY ZONE,' illuminated at night or so designed to reflect light from head lamps" constitute the "establishing [of] a safety zone" pursuant to section 1109. When the city so assumed the duty of illumination it necessarily excluded the interference of others, even though, like the street railway company, specially or peculiarly interested in the safety zone platform. There is no evidence that the railway company had any duty to light or repair if the light failed.

The negligence established by the verdict is the negligence of the city; unfortunately the city was not brought into the case within the time allowed by the statute for that purpose; as appellant is not responsible for the

464

city's neglect of duty and as no other negligence on the part of appellant is shown, its point for binding instructions should have been affirmed.

While the effect of the statute does not seem to have been considered in the court below and was not mentioned in the briefs on appeal, we all agree that it is controlling; it is therefore unnecessary now to discuss other questions referred to or that might be suggested by the record.

The judgment is reversed and here entered for defendant.